Robert J. COOKE, Plaintiff,

v.

**PROTOTYPE & PLASTIC MOLD COMPANY, INC. and Murray Gerber, Defendants.**

**No. Civ.A. 3:00–CV1013JCH.**

United States District Court, D. Connecticut.

Aug. 29, 2002.

Jonathan L. Gould, Hartford, CT, for Plaintiff.

John Rose, Jr., Levy & Droney, P.C., Farmington, CT, Christopher Brigham, Updike, Kelly & Spellacy, P.C., New Haven, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]

HALL, District Judge.

The plaintiff, Robert Cooke ("Cooke"), brings this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a), and the Connecticut Fair Employment Practices Act (CFEPA), Conn.Gen.Stat. § 46a–60(a), against his former employer, Prototype & Plastic Mold Company, Inc. ("Prototype") and Prototype's former owner, Murray Gerber ("Gerber") (collectively "defendants"). Cooke alleges that defendants terminated his employment at Prototype because of his age.

Defendants seek summary judgment with respect to all claims. More specifically, defendants assert that Prototype terminated Cooke because new management determined he was under-qualified and overpaid, a determination that had nothing to do with Cooke's age. Furthermore, defendant Gerber claims that he cannot be held liable for aiding and abetting an unlawful employment practice under § 46a–60(a)(5) because an illegal employment practice did not occur, nor is a cause of action for age discrimination against him as an individual permitted by § 46a–60(a)(1). Based on the reasons set forth below, defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## I. FACTUAL BACKGROUND

This action arises out of the termination of a long-term employment relationship between Cooke and Prototype. Prototype is a plastic mold-making and molding company located in Middletown, Connecticut. Cooke worked for Prototype from July of 1970 until his termination in April of 1999. For virtually all of that time, Gerber was the owner and president of Prototype. Cooke began his career as a mold maker, but Gerber promoted him to mold making foreman, mold making superintendent, and finally to Vice President of Operations in 1986. Gerber put Prototype up for sale during 1997 and 1998, and Victor deJong ("deJong") purchased the company in 1999. Shortly after deJong purchased Prototype, he terminated Cooke's employment. Cooke was 63 years old at the time of his termination.

During Cooke's employment as Vice President of Operations, he supervised the department managers at Prototype, including Robert Linden (Engineering Manager), Dan O Brien (Mold Making Superintendent), and Dave Williard and Karl

Sizemore (Molding Department Leaders). Cooke reported directly to Gerber, the president and owner of the company.

During the several years preceding his termination, Gerber made a number of ageist comments about Cooke. Gerber told Cooke that he was "over the hill," informed him that corporate America does not pay persons who are over sixty the same kind of compensation as younger persons, and openly stated that Gerber would retire Cooke when Cooke reached the age of 65.

As part of the prospectus for the sale of Prototype, Gerber provided deJong with information regarding his current management personnel. In the report, Gerber described each management employee according to his age, salary, and current duties. Gerber reported that Cooke "runs the plant but is not involved in day-to-day operations." Defs.' Mot. for Summ.J., Exh. 5. Other than Gerber himself, Cooke was the oldest and highest-paid employee listed.

To deJong, Gerber's description of Cooke raised a "huge red flag." deJong Depo. at 21, line 20. DeJong interpreted Gerber's statement that Cooke was not involved in day-to-day operations as indicating that Cooke was not "able to work with department managers and actually help them in their jobs." Id. at 23, lines 11–13. Gerber and deJong also had a number of conversations concerning the company and Cooke's qualifications and job performance.

DeJong claims that he did not rely on Gerber's description, but rather conducted his own investigation of Cooke's qualifications as part of his due diligence. DeJong interviewed Cooke several times, and he claims he interviewed "the people responsible for the operating departments," who informed him that Cooke was only involved in the review and pay process in their departments, but did not assist them in their actual operating duties. Id. at 24, lines 8–17. Cooke disputes this characterization of his role within the company. In support of his involvement in the company's operations, Cooke offers the deposition testimony of Dave Williard, Karl Sizemore, and Dan O Brien, three managers of operating departments, who all agreed Cooke was involved in the day-to-day operations of their departments and the company as a whole.

Defendants claim that, based on the evidence deJong gathered during the process of purchasing Prototype, deJong decided to terminate Cooke's employment, effective May 17, 1999. Cooke claims Gerber notified him on April 6, 1999, the day the sale of Prototype to deJong was finalized, that Cooke "was through" at the company. Two days later, deJong confirmed Cooke's termination. Soon thereafter, deJong circulated a memo to all Prototype employees stating that Cooke had announced his retirement, and that Robert Linden would assume all of Cooke's responsibilities.

At the time of Cooke's termination, Robert Linden, Cooke's replacement, had worked at Prototype as the manager of the engineering department for two years and was 49 years old. Defendants claim that Linden was significantly more qualified for the position than Cooke. Linden has an undergraduate degree in engineering and a masters in business administration, and previously served as the Vice President of Engineering and the Director of Manufacturing at other companies. Cooke holds a vocational high school diploma, has no college training, and acquired all of his managerial experience on the job at Prototype.

Cooke disputes that Linden was more qualified. To support his claim, he offers the testimony of department managers, who stated that Linden was less knowledgeable and less capable than Cooke had been. DeJong terminated Linden for un-

satisfactory performance less than a year after his promotion.

## II. DISCUSSION

### A. Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.,* 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence that would allow a jury to find in his favor. *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Graham,* 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton,* 202 F.3d at 134. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York,* 202 F.3d 175, 178 (2d Cir.2000).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. The substantive law of the claim governs materiality, as "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

### B. Age Discrimination under the ADEA and CFEPA

The ADEA and the CFEPA prohibit discrimination based on a person's age. 29 U.S.C. § 623(a)(1); Conn.Gen. Stat. § 46a–60(a)(1). Courts use the same framework to analyze claims under both statutes. *Levy v. Comm'n on Human Rights and Opportunities,* 236 Conn. 96, 103, 671 A.2d 349 (1996) (Connecticut courts review federal precedent for guidance in evaluating state discrimination claims). Because this is a disparate treatment case in which the plaintiff alleges that the defendants acted with discriminatory intent or motive, the case is governed by the burden shifting analysis set out in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001) (ADEA disparate treatment claims analyzed under same burden shifting framework as Title VII claims).

#### 1. *Prima Facie* Case

The initial burden in a disparate treatment claim brought under Title VII is on the plaintiff to establish a *prima facie* case of discrimination. To do so, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for

the position; (3) he experienced an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Id.*

In this case, Cooke is over 40 and is, therefore, a member of a protected class. 29 U.S.C. § 631(a). The parties do not dispute that Cooke suffered an adverse employment action when he was terminated by Prototype in April of 1999. Defendants dispute that Cooke was qualified for the position of Vice President of Operations. However, Cooke's thirteen year term of employment in that position is sufficient evidence to raise at least a material issue of fact that he was generally qualified for his job. *See de la Cruz v. New York City Human Resources Admin.,* 82 F.3d 16, 20 (2d Cir.1996) (to satisfy prima facie test of qualifications, plaintiff "need only demonstrate that he possesses the basic skills necessary for performance of the job"). Finally, because Prototype replaced Cooke with someone who was fourteen years his junior, the termination occurred under circumstances which could give rise to an inference of discrimination. *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 168 (2d Cir.2001) (the fact that the plaintiff was replaced by someone substantially younger gives rise to an inference of discrimination). Therefore, the court finds that Cooke has established a *prima facie* case of discrimination regarding his termination.

### 2. Legitimate, Non–Discriminatory Reason

Once a plaintiff has established a *prima facie* case, a rebuttable presumption of discrimination arises and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. *Abdu–Brisson,* 239 F.3d at 468 (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Defendants assert that Cooke's termination resulted from his inability to adequately perform the duties of a Vice President of Operations. They allege that it was in Prototype's best interest to terminate Cooke, who was underqualified and overpaid. The court finds that this reason is sufficient to meet defendants' burden of production. *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (termination for failure to maintain accurate attendance records is non-discriminatory reason); *Abdu–Brisson,* 239 F.3d at 469 (economic concerns are legitimate business reasons).

### 3. Pretext

Once a defendant offers a legitimate, non-discriminatory reason for its actions, the presumption of discrimination which arose with the establishment of the *prima facie* case drops out. The plaintiff must then come forward with evidence to fulfill his ultimate burden of proving that the defendant intentionally discriminated against him. *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097. "The ultimate issue in an ADEA case is whether the plaintiff has proved by a preponderance of the evidence that [his] age played a motivating role in, or contributed to, the employer's decision." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 76 (2d Cir.2001) (citation omitted).

In order to satisfy this burden of persuasion, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason but was a pretext for discrimination. *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097. As the Supreme Court explained in *Reeves:*

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it

may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.... Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

*Id.* at 147, 120 S.Ct. 2097 (citations omitted). Evidence that an employer's reason is false, combined with the evidence presented to establish a *prima facie* case, in some cases, can be enough to sustain a plaintiff's burden, and a plaintiff need not have independent evidence of discrimination. *Id.; see also Zimmermann v. Associates First Capital Corp.,* 251 F.3d at 381–82.

However, there are some instances where such a showing will be insufficient to sustain a finding of liability. One such instance is where "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, ... a second is where the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097.

■ The Second Circuit has, following *Reeves,* advocated a case-specific approach to determining whether evidence of the falsity of a defendant's reason and a *prima facie* case were enough to support a finding of discrimination. *Zimmermann,* 251 F.3d at 381–82. A finder of fact may consider the strength of the *prima facie* case, the probative value of the proof that the defendant's reason is pretextual and any other evidence presented in the case

when determining if the plaintiff has sustained his burden. *Id.*

In this case, the plaintiff has alleged that defendants' stated reason for his termination is false and that he was effectively performing the duties his position required. To support his claim, he offers the testimony of several department managers, who all agree Cooke performed his job adequately, as well as recommendations from management consultants who portrayed Cooke at the time of his termination as a skilled and knowledgeable manager.

■ Cooke has also introduced evidence that Gerber, whose evaluation of Cooke may have played a significant role in deJong's decision to fire him, made a number of ageist remarks at Cooke's expense. Although defendants claim that Gerber's comments are irrelevant because it was deJong, not Gerber, who decided to fire Cooke, their view of causation in discrimination actions is far too limited. A jury could find that Gerber's comments are probative of discrimination in Cooke's termination if Gerber exercised influence over deJong's decision. *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 55 (1st Cir.2000) (one way to prove pretext is by showing "that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker"); *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 226 (5th Cir. 2000) ("If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decisionmaker"). Cooke has raised a material issue of fact as to whether Gerber influenced deJong's decision.

Based on the above analysis, the court finds that there are genuine issues of material fact in dispute with respect to

Cooke's ADEA and CFEPA claims. Therefore, defendants' motion for summary judgment with respect to these claims is denied.

### C. Aiding, Abetting and Compelling Discrimination under the Connecticut Fair Employment Practices Act

In addition to his claims against Prototype, Cooke also brings claims against Gerber as an individual under Conn.Gen. Stat. § 46a–60(a)(5). That statute provides that it is an unlawful discriminatory practice for any person, "whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so." *Id.*

■ Defendants' summary judgment brief focuses on the fact that Cooke cannot sustain this cause of action against Gerber unless he has first established the existence of an unfair employment practice. As discussed *supra,* the court is unable to conclude, as a matter of law, that Cooke's termination was not discriminatory. In addition, there are genuine issues of material fact in dispute as to whether Gerber's evaluation of Cooke reflected ageist animus and to what degree that evaluation influenced deJong's decision. As a result, summary judgment on this claim is improper.

### D. Age Discrimination Claims against Gerber under § 46a–60(a)(1)

■ Since the filing of the parties' papers in this case, the Connecticut Supreme Court held in *Perodeau v. City of Hartford,* 259 Conn. 729, 792 A.2d 752 (2002), that, like its federal counterparts, Title VII and the ADEA, " § 46a–60(a)(1) does not impose liability on individual employees." *Id.* at 737, 792 A.2d 752. The court therefore grants defendants' motion for sum-

mary judgment with respect to Cooke's claim against Gerber under Conn.Gen.Stat. § 46a–60(a)(1).

## III. CONCLUSION

For the above reasons, the defendants' motion for summary judgment [Dkt. No. 15] is GRANTED IN PART and DENIED IN PART. As to the claims against Gerber under Conn.Gen.Stat. § 46a–60(a)(1), defendants' motion is granted. As to all other claims asserted in the complaint, defendants' motion is denied.

**SO ORDERED.**